UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

HELD & HINES LLP,

                                        Plaintiff,                    16-CV-05273 (JSR)(SN)

                        -against-                                     **REPORT AND
                                                                      RECOMMENDATION**

SANDY HUSSAIN,

                                        Defendant.

----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE JED S. RAKOFF:**

On July 31, 2018, the Court issued a Report and Recommendation regarding Plaintiff

Held & Hines LLP's ("H&H") motion for summary judgment. ECF No. 115. The Court

recommended (1) dismissing H&H's breach of contract claim *sue sponte*, but (2) granting

summary judgment for H&H's claim for *quantum meruit*. Id. at 14–15. On September 15, 2018,

the Honorable Jed S. Rakoff adopted the Court's decision in its entirety and directed the Court to

report and recommend concerning the reasonable value of services H&H provided to Defendant

Sandy Hussain. ECF No. 117. H&H filed Proposed Findings of Fact and Conclusions of Law on

December 21, 2018, ("Pl's Br."), and Hussain filed an opposition on February 6, 2019 ("Def's

Br."). ECF Nos. 124–25. For the reasons that follow, H&H's motion should be GRANTED in

part and DENIED in part.

## BACKGROUND

Between October 9, 2014, and April 14, 2016, H&H provided legal services to Hussain in

connection with two related litigations. Pl's Br., ¶ 1. The first litigation, Hussain v. Slack, No.

510283/2014, was filed by Hussain in New York Supreme Court (the "State Action"). Id., ¶ 2.
The second litigation, MDB LLC v. Hussain, No. 14-CV-09281 (VEC), was filed against
Hussain in the United States District Court for the Southern District of New York (the "Federal
Action."). Id. Both cases involved whether Hussain or MDB LLC ("GreenPearl") was the
rightful owner of the "FASHION DIGITAL" trademark. Id., ¶ 18.

The Federal Action, at issue here, involved several phases of litigation. GreenPearl
commenced the lawsuit on November 21, 2014, asserting claims for, among other things, unfair
competition and false advertising under the Lanham Act. ECF No. 124-1, Declaration of Marc
Held ("Held Decl."), Exhibit I, at 1. GreenPearl also sought a preliminary injunction enjoining
Hussain from using the FASHION DIGITAL trademark. Id. H&H appeared for a conference
before the Honorable Valerie Caproni on November 24, and opposed GreenPearl's Order to
Show Cause on December 1. Pl's Br., ¶¶ 26–27. GreenPearl's application for a TRO was denied
the following day. Held Decl., Exhibit H, at 1.

The parties then conducted expedited discovery. This included document demands,
interrogatory requests, and eight depositions. Pl's Br., ¶¶ 42, 44. In addition, on December 15,
2014, H&H answered the complaint, seeking to enjoin GreenPearl from using the FASHION
DIGITAL mark and asserting counterclaims under the Lanham Act and state law. Held Decl.,
Exhibit F, at ECF No. 21.

Two months later, in February 2015, the parties conducted a three-day bench trial before
Judge Caproni. The court heard testimony from six witnesses and admitted approximately 90
exhibits into evidence. Held Decl., Exhibit I, at 2. H&H filed its Proposed Findings of Fact and
Conclusions of Law on March 2, 2015, as well as an opposition to GreenPearl's submission the
following week. Id., Exhibit F, at ECF Nos. 65, 67. In a decision dated May 29, 2015, Judge

Caproni (1) concluded that Hussain owned the FASHION DIGITAL mark; and (2) temporarily restrained GreenPearl from using the mark for any purpose. Id., Exhibit I, at 32, 39.

In June 2015, H&H claims that it was "building its case" for permanent injunctive relief and "monitor[ing] [GreenPearl]" for any violation of the May 29 Order. Pl's Br., ¶¶ 55–56. H&H's billing records show that, each day, including Saturday and Sunday, the same two attorneys repeatedly performed 3.5 hours of "research" regarding "GP's Breach of Injunction." Held Decl., Exhibit C. In addition, H&H filed a proposed permanent injunction on June 5, 2015, and attended a related conference on June 26. Id., Exhibit F, at ECF Nos. 77, 83. Following the conference, Judge Caproni permanently enjoined GreenPearl from using the FASHION DIGITAL mark. Id., ECF No. 84.

H&H continued to perform daily research regarding GreenPearl's "Breach of Injunction" throughout July 2015. Held Decl., Exhibit C. Using this information, on July 21, 2015, H&H filed an Order to Show Cause for Civil Contempt, alleging that GreenPearl had violated the permanent injunction. Id., Exhibit F, ECF Nos. 101–04. Judge Caproni conducted a hearing to resolve the parties' dispute: although the court did not hold GreenPearl in contempt, it ordered GreenPearl to remove all references to "Fashion Digital" from its various websites. Id., ECF Nos. 120, 137; Exhibit N, at 5. Further, while this dispute was ongoing, GreenPearl filed a motion to dismiss Hussain's remaining counterclaims, and H&H, in response, filed a motion for leave to amend. Id., Exhibit F, ECF Nos. 110, 113.

At this point, the pace of the litigation began to slow. On August 28, 2015, H&H filed its opposition to GreenPearl's motion to dismiss, and on September 11, filed its reply papers in further support of its motion for leave to amend. Held Decl., Exhibit F, ECF Nos. 127–28, 131–33. Later, in February 2016, H&H filed a second motion for contempt against GreenPearl. Held

Decl., Exhibit F, ECF Nos. 135, 137, 139. The parties appeared for oral argument on March 8, 2016, after which Judge Caproni directed the parties to provide additional briefing for the court's review. Id., ECF No. 143. In addition, on March 29, the court granted in part GreenPearl's motion to dismiss Hussain's counterclaims. Id., Exhibit N, at 26. The same day, H&H filed a motion to withdraw as Hussain's counsel. Id., Exhibit F, ECF No. 154.

The court conducted an evidentiary hearing regarding H&H's renewed motion for contempt on April 12, 2016. Held Decl., Exhibit F, ECF No. 151. Judge Caproni found that GreenPearl violated the permanent injunction and should be held in civil contempt. Id., Exhibit O, at 6. In addition, following a conference on April 15, the court granted H&H's motion to withdraw, bringing H&H's work on behalf of Hussain to a close. Id., Exhibit F, ECF No. 163.

On July 1, 2016, H&H filed this diversity action against Hussain for breach of contract, and in the alternative, *quantum meruit*. ECF No. 1. Relying on Judge Caproni's prior rulings, the Court found that H&H withdrew from the Federal Action for good cause and therefore was entitled to the reasonable value of its services under New York law. ECF No. 115, at 4–5, 13, adopted by, ECF No. 117.

Here, H&H claims that it worked 1,764.51 hours in the Federal Action, with a value of $615,188.50. ECF No. 127, Corrected Exhibit C, at 20.[1] H&H further claims that it is entitled to $36,602.01 in expenses. Pl's Br., ¶ 6. As discussed below, the Court recommends reducing H&H's fees substantially.

---

[1] H&H initially sought *quantum meruit* for only 1,711.26 hours of work. Pl's Br., ¶ 5. At the Court's request, however, H&H provided an updated version of its billing records. ECF No. 126. H&H corrected certain formulaic errors in its underlying spreadsheet, but did not add any new billing entries or increase the number of alleged hours for already-existing entries. Id.

**DISCUSSION**

## I.     Legal Standard

Under *quantum meruit*, an attorney is entitled to the "reasonable value of the services rendered." Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York, 754 N.Y.S.2d 200, 224 (1st Dep't 2002). To determine the "reasonable value" of an attorney's services, courts consider "the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved, and [the] amounts customarily charged for similar services in the same locality." Nabi v. Sells, 892 N.Y.S.2d 41, 44 (1st Dep't 2009) (quoting Schneider, 754 N.Y.S.2d at 224).

That said, there is no "hard-and-fast rule" to evaluate an attorney's compensation. In re Jakobson, 757 N.Y.S.2d 466, 466 (2d Dep't 2003). Indeed, because the federal lodestar analysis is "sufficiently congruent with the criteria applicable under New York law," courts may use the lodestar approach to determine a *quantum meruit* recovery. Hampshire Grp. Ltd. v. Scott James Co., No. 14-CV-2637 (JGK) (MHD), 2015 WL 5306232, at *16 (S.D.N.Y. July 27, 2015) (citing Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148–49 (2d Cir. 1998)), adopted by, ECF No. 44 (Jan. 5, 2016); accord Balestriere PLLC v. CMA Trading, Inc., No. 11-CV-9459 (MHD), 2014 WL 7404068, at *3 (S.D.N.Y. Dec. 31, 2014); Brennan v. New York Law School, No. 10-CV-0338 (DLC) (HBP), 2012 WL 4177736, at *3 (S.D.N.Y. Aug. 15, 2012), adopted by, 2012 WL 4195826 (Sept. 20, 2012). Because the lodestar approach "easily and fairly encompasses the [relevant] factors," the Court will use that approach here. See Hampshire, 2015 WL 5306232, at *16.

The lodestar — the product of a reasonable hourly rate and the reasonable number of hours required — produces a presumptively reasonable fee. Millea v. Metro-North Railroad Co.,

658 F.3d 154, 166 (2d Cir. 2011). A "reasonable hourly rate" is the rate a paying client would be willing to pay. Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). To determine this amount, courts rely on the "hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and expertise." Abdell v. City of New York, No. 05-CV-8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (citations omitted). Courts must also consider the "case-specific variables" set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),[2] although separate findings as to each factor are unnecessary. C.B. v. New York City Dep't of Educ., No. 18-CV-7337 (CM), 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (citations omitted).

To determine the reasonable number of hours required to litigate the case, courts must review an attorney's contemporaneous time records. Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). Any hours that were not "reasonably expended" should be excluded. Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing Co., No. 11-CV-4308 (PGG), 2013 WL 6171660, at *4 (S.D.N.Y. Nov. 25, 2013). This analysis takes into consideration "overstaffing, the skill and experience of the attorneys, [and any] redundant, excessive, or unnecessary hours." Gonzalez, 112 F. Supp. 3d at 29 (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)).

---

[2] The Johnson factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Arbor Hill, 522 F.3d at 186 n.3.

Multiplying the reasonable number of hours by the appropriate hourly rate produces the lodestar. Millea, 658 F.3d at 166. Although this amount is not conclusive, the court should apply an adjustment only in rare circumstances. We Shall Overcome Found. v. Richmond Org., Inc., 330 F. Supp. 3d 960, 974 (S.D.N.Y. 2018) (citing Millea, 658 F.3d at 167).

## II.    Hourly Rate

The hourly rate of the H&H attorneys who provided legal services to Hussain ranged from $300 to $450 per hour. Pl's Br., ¶ 8. Although H&H claims that its requested rates are "very reasonable" for litigation involving intellectual property, it does not cite any caselaw for this proposition, nor provide any information regarding the attorneys' identities or professional experience. Id., ¶ 9. Based on the docket sheet and H&H's updated billing records (submitted at the Court's request), it appears the following individuals worked on the Federal Action:

| Name | Experience | Proposed Billing Rate |
|------|-----------|----------------------|
| Marc Held | Partner | $450 per hour |
| Philip Hines | Partner | $450 per hour |
| Scott Richman | Associate | $300 per hour |
| Fred Seth Rosenberg | Associate | $300 per hour |
| Eric Rodriguez | Legal Assistant | $100 per hour |
| Jesmine DeJesus | Legal Assistant | $100 per hour |

Where the moving party fails to provide information regarding the reasonableness of its proposed rates, courts may take judicial notice of the billing rates customarily awarded in the relevant forum. KX Techs., LLC v. Zuma Water Filters, Inc., No. 16-CV-01433 (CSH), 2018 WL 3302589, at *6 (D. Conn. July 5, 2018) (citing Farbotko v. Clinton Cty. Of New York, 433 F.3d 204, 209 (2d Cir. 2005)).

In this District, partners in small law firms who specialize in trademark and copyright law typically receive between $400 and $500 per hour. See, e.g., Barcroft Media, Ltd. v. Fashion In Me Inc., No. 16-CV-7574 (LGS) (DF), 2018 WL 4565889, at *6 (S.D.N.Y. June 5, 2018)

(awarding $500 per hour to a partner with 24 years' experience), adopted by, 2018 WL 4568727 (July 25, 2018); Melodrama Publ'g, LLC v. Santiago, No. 12-CV-7830 (JSR) (FM), 2015 WL 2380521, at *4 (S.D.N.Y. May 19, 2015) (awarding $425 per hour for named partners with 21 years' experience); Teen Model v. Blood is the New Black, No. 11-CV-5766 (GBD) (DF), 2012 WL 5838185, at *4 (S.D.N.Y. Oct. 26, 2012) (awarding $450 per hour for a named partner).[3] This is consistent with fee rates for experienced attorneys in small firms generally, which typically range between $250 and $450 per hour. See 6D Global Techs., Inc. v. Lu, No. 15-CV-1120, 2016 WL 1756920, at *4 (S.D.N.Y. May 3, 2016) (citations omitted).

The appropriate rate for an associate depends upon his level of experience. Thor 725 8th Avenue LLC v. Goonetilleke, No. 14-CV-4968 (PAE), 2015 WL 8784211, at *11 (S.D.N.Y. Dec. 15, 2015). For smaller firms, courts typically award $300 per hour for "senior associates with at least eight years of experience," and between $125 and $215 per hour to associates "with three years of experience or less." Id. (quoting Apolinario v. Luis Angie Deli Grocery Inc., No. 14-CV-2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015)). Other courts have approved billing rates in line with this framework. See, e.g., Plus Enters. LLC v. Sun Trading Int'l, LLC, No. 16-CV-8987 (VB) (FED), 2017 WL 6492117, at *9 (S.D.N.Y. Nov. 29, 2017) (approving $230 and $260 rates for associates in small law firm), adopted by, 2017 WL 6496541 (Dec. 15, 2017); Skoogfors v. Lycos, Inc., No. 16-CV-2742 (PGG) (JCF), 2017 WL 10591577, at *5 (S.D.N.Y. Apr. 21, 2017) (finding that $225 per hour is "well within the range of acceptable rates" for an associate with three years of experience practicing copyright and trademark litigation), adopted by, 2018 WL 4761521 (S.D.N.Y. Oct. 2, 2018); BWP Media USA

---

[3] Higher rates for experienced copyright litigators are usually reserved for attorneys at large law firms. See GAKM Res. LLC v. Jaylyn Sales Inc., No. 08-CV06030 (GEL), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009).

Inc. v. Uropa Media, Inc., No. 13-CV-7871 (JSR) (JCF), 2014 WL 2011775, at *3 (S.D.N.Y

May 16, 2014) (awarding $200 per hour to a third-year associate in a small law firm who made

"no representation that she has special expertise in copyright litigation"), adopted by, ECF No.

23 (Aug. 4, 2014).

      Here, H&H's proposed hourly rates should be reduced. Marc Held, the lead partner on

the case, testified during his deposition that the Federal Action was the first time he worked on

trademark or IP-related litigation. Def's Br., ECF No. 125, at 8.[4] H&H provides no evidence that

Philip Hines, the other partner on the case, or either of the associates, had any more relevant

experience than Held. Put simply, a reasonable client would not be willing to pay an attorney's

normal billing rate for work that the attorney had never done before. This is particular true

where, as here, (1) the work involved, in Held's words, a "landmark trademark case" concerning

"millions" of dollars; and (2) the client had separately retained an IP-firm to work on the same

litigation. See id., at 22; ECF No. 113, at 7–8; ECF No. 106, Exhibit F. In this regard, the

surrounding circumstances caution against awarding the H&H attorneys their standard billing

rates.

      Further, until prompted by the Court, H&H failed to provide even the *names* of the

attorneys for whom they seek reimbursement. The burden is on the fee applicant to produce

satisfactory evidence that its requested rates are justified. Blum v. Stenson, 465 U.S. 886, 896

n.11 (1984). When the applicant fails to meet this burden, courts will "award fees at a rate lower

than requested." Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 362 (S.D.N.Y.

2010) (collecting cases). In a recent case, for example, the court reduced the moving party's

proposed hourly rates to the "middle of the accepted range for associates." Tr. of Local 813 Ins.

---

[4] Citations to Hussain's opposition refer to the docket number and corresponding ECF page.

Tr. Fund v. Personal Touch Funeral Serv., No. 18-CV-6535 (NG) (VMS), 2019 WL 2295775, at

*3 (E.D.N.Y. May 30, 2019). The court emphasized that it lacked the necessary information to

"evaluate whether the [proposed] blended rate is reasonable." Id.

A similar problem exists here. H&H requests $300 per hour for Scott Richman, which is

typically awarded to associates with at least eight years of experience. But Richman's LinkedIn

profile indicates that he had been practicing for only one-to-two years while he represented

Hussain.[5] This suggests that Richman should receive closer to $200 per hour, as he had minimal

experience during the relevant period. The Court is similarly at a loss to evaluate the proposed

rate for Fred Seth Rosenberg, the other associate assigned to the Federal Action. Because H&H

is "responsible for [this] uncertainty," it should be the party to "bear the resulting burden."

Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd., No. 07-CV-1455 (CPS), 2008 WL

4190955, at *10 (E.D.N.Y. Sept. 3, 2008).

Accordingly, H&H's proposed hourly rates for its attorneys should be reduced by $50 per

hour. The proposed rates for H&H's paralegals, however, are reasonable and should be adopted.

See Themis Capital v. Democratic Republic of Congo, No. 09-CV-1652 (PAE), 2014 WL

4379100, at *8 (S.D.N.Y. Sept. 4, 2014) ("[T]he caselaw reflects that paralegal billing rates of

between $90 and $125 are more in line with the prevailing market rates in this district."). To

summarize, the Court recommends reducing the proposed rates as follows:

| Name | Experience | Proposed Billing Rate | Reduced Billing Rate |
| --- | --- | --- | --- |
| Marc Held | Partner | $450 per hour | $400 per hour |
| Philip Hines | Partner | $450 per hour | $400 per hour |
| Scott Richman | Associate | $300 per hour | $250 per hour |
| Fred Seth Rosenberg | Associate | $300 per hour | $250 per hour |
| Eric Rodriguez | Legal Assistant | $100 per hour | $100 per hour |
| Jesmine DeJesus | Legal Assistant | $100 per hour | $100 per hour |

---

[5] See https://www.linkedin.com/in/scott-richman-b7669412 (last visited July 28, 2019).

H&H emphasizes that it secured "phenomenal results" for Hussain, "recovering her rights in her trademarks" and "obtaining findings of sanctions against the opposition." Pl's Br., ¶ 17. While largely true, this does not change the Court's analysis. Hussain retained an IP-firm to help litigate the Federal Action, and that firm performed substantial work (nearly 450 hours) throughout key portions of the litigation. See Def's Br., ECF No. 125, at 146–58. The "results obtained" factor therefore does not support H&H's proposed rates. In any event, H&H is well-aware of its obligations in submitting a fee application. As recently as July 2018, a court in this District excluded hours from a fee award because H&H provided no information regarding the qualifications of certain attorneys. Poulous v. City of New York, No. 14-CV-03023 (LTS) (BCM), 2018 WL 3750508, at *12 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018). Consistent with this decision, the Court recommends that minor reductions to H&H's hourly rates are warranted.

## III.   Hours Worked

The number of hours should be reduced for four reasons: (1) the billing entries are vague; (2) the litigation was overstaffed and often duplicative; (3) the time records contain significant block billing; and (4) numerous billing entries are not credible.

### A.   Vague Billing Entries

Courts may reduce an attorney's requested fees when the billing entries are vague and do not sufficiently demonstrate what counsel did. Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (citations omitted). A billing entry is "vague" if it "lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." Handschu v. Special Servs. Div., 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010).

Here, H&H's time records contain broad and overly-generalized billing entries. Across 11 entries, for example, H&H billed 59.75 hours for "review of docs/deposition prep," "review of discovery/research," or "Prep for Trial." See Corrected Exhibit C (referring to entries on 12/22, 12/23, 12/26, 12/28, 01/20, 01/26). These are by no means the only examples of vague entries. As a result, at least a minor reduction in fees is warranted. See Abeyta v. City of N.Y., No. 12–CV–5623 (KBF), 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) (finding "Trial Preparation" impermissibly vague); New York Youth Club v. Town of Harrison, No. 12-CV-7534 (CS), 2016 WL 3676690, at *5 (S.D.N.Y. July 6, 2016) (same conclusion for "Research" and "Discovery"); Valentine v. Aetna Life Ins. Co., No. 14-CV-1752 (JFB) (GRB), 2016 WL 4544036, at *9 (E.D.N.Y. Aug. 31, 2016) ("'[L]egal research' or 'file review' are . . . too vague to support a fee award.").

Other parts of H&H's time records raise more significant issues. For each of 60 consecutive days — including Saturday and Sunday and the Fourth of July — Marc Held and Scott Richman billed a combined 3.5 hours for researching "GP's Breach of Injunction." See Corrected Exhibit C, at 12–17. The billing entries are entirely identical: Held always billed 2 hours, and Richman always billed 1.5. Id. H&H seems to have been preparing for their initial contempt motion, which focused "primarily on the existence of vestiges of 'FASHION DIGITAL' on GreenPearl's web pages." Held Decl., Exhibit N, at 5 n.2. Because the billing entry contains no information regarding the worked performed, the Court cannot determine whether the attorneys' "research" was reasonable in relation to the amount charged; in this instance, approximately $79,500. At a minimum, the Court is skeptical that a partner — rather than a junior, less expensive associate — needed to perform a majority of H&H's evidence gathering.

### B.    Overstaffing and Duplicative Work

The use of multiple attorneys is not *per se* unreasonable. Simmonds v. New York City Dep't of Corrections, No. 06-CV-5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (citations omitted). Nevertheless, in determining whether the requested hours are "excessive, redundant, or otherwise unnecessary," courts should consider "the number of attorneys assigned to staff particular matters or events." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10-CV-2262 (DRH) (AYS), 2019 WL 2870721, at *7 (E.D.N.Y. June 18, 2019), adopted by, 2019 WL 2869150 (E.D.N.Y. July 3, 2019). Allocating an "inordinate number of attorneys to litigate the action" is grounds to reduce a fee award. Houston v. Cotter, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017) (collecting cases).

Here, H&H overstaffed its appearances throughout the Federal Action. Three and sometimes four attorneys (plus a paralegal) were consistently brought to trial dates, conferences before Judge Caproni, and settlement mediations before this Court. See Corrected Exhibit C (referring to entries on: 01/29, 01/30, 02/02, 06/26, 07/31, 09/02, 03/08, and 04/12). H&H also used a similar number of attorneys during depositions, although its use of block-billing, discussed below, somewhat confuses the issue. Id. (referring to entries on: 01/08, 01/09, 01/12, 01/14, 01/21, and 01/22). Excluding any hours worked during a deposition, the third-and-fourth attorneys billed an additional 97.5 hours during their time in court. Courts routinely make reductions for this type of duplicative work. See, e.g., LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (reducing fees for overstaffing where three or more attorneys attended depositions, staffing meetings, and internal conferences); Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. Of Pomona, 188 F. Supp. 3d 333, 342 (S.D.N.Y. 2016)

(finding a reduction was warranted where, among other things, three attorneys attended a pre-motion conference).

A reduction based on overstaffing is particularly appropriate here. In addition to attorneys from H&H, Michael Gabriel, a partner at the IP-law firm Gabriel & Pelaez ("G&P"), performed significant work in the Federal Action. He reviewed discovery materials, drafted substantive litigation documents, and prepared for and attended trial. See Def's Br., ECF No. 125, 146–58. This resulted in duplicative billing. As but one example, four attorneys (three from H&H, and one from G&P) attended the Court's settlement conference on March 4, 2015, charging $7,050 for 17.5 hours of work.[6] Id., at 156; Corrected Exhibit C, at 12. Moreover, for H&H's second contempt motion, a separate attorney, Joshua Bressler, conducted both oral arguments on Hussain's behalf. Def's Br., ECF No. 125, at 17 (Held to Hussain: "Bressler will take the lead [during the April 12 conference,] as he did on March 8"); Held Decl., Exhibit F, at 152, 171 (transcripts of the relevant proceedings). Nevertheless, H&H saw fit to bring three attorneys, including two partners, to both conferences. See Corrected Exhibit C, at 18–20; Held Decl., Exhibit F, No. 152, at 2 (Court: "We have the entire Held firm here today?"). These circumstances warrant an additional reduction in H&H's fees.

### C.      Block Billing

H&H's "block-billing" prevented the Court from properly reviewing the attorneys' time records. Block-billing occurs when an attorney groups multiple tasks into a single billing entry. Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. June 3, 2015). This type of billing is permissible, but only when the records "allow the court to conduct a meaningful review of the

---

[6] Although Gabriel billed 3 hours for attending the settlement conference (the typical length of a conference before this Court), the three H&H attorneys billed 4.5, 4.5, and 5.5 hours, respectively.

hours requested." <u>Restivo v. Hessemann</u>, 846 F.3d 547, 591 (2d Cir. 2017) (citing <u>Merck Eprova AG v. Gnosis S.P.A.</u>, 760 F.3d 247, 266 (2d Cir. 2014)).

More specifically, block-billing is problematic in three circumstances: first, where "large amounts of time (*e.g.* five hours or more) are block billed;" <u>Beastie Boys v. Monster Energy Co.</u>, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015); second, where "there [is] evidence that the hours billed were independently unreasonable;" <u>Hnot v. Willis Grp. Holdings, Ltd.</u>, No. 01-CV-6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008); and third, where "[the fee applicant] has combined activities compensable at different rates." <u>G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.</u>, 894 F. Supp. 2d 415, 441 (S.D.N.Y. 2012) (citing <u>Hnot</u>, 2008 WL 1166309, at *6). All three circumstances are present here.

H&H utilized block-billing throughout its time records. Most notably, on 19 separate occasions, H&H combined more than 11 hours of work on multiple tasks into a single time entry, without specifying the time on each task. <u>See</u> Corrected Exhibit C (referring to entries on 11/22–24, 12/2, 12/5, 12/8, 12/12, 12/15–16, 12/24, 12/29, 01/23, 01/25, 01/27–29, 01/31, 02/01, 07/06). Of those 19 occasions, H&H block billed at least 15 hours of work 4 times, and at least 25 hours of work 7 times, totaling more than 410 hours.[7] The use of such large "blocks" prevents the Court from conducting a "conscientious and detailed inquiry" into a significant portion the alleged hours. <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994); <u>Trinidad v. Pret a Manger (USA) Ltd.</u>, No. 12-CV-6094 (PAE), 2014 WL 4670870, at *10 (S.D.N.Y. Sept. 19, 2014) (reducing fee award based on block billed entries covering as many as 16 hours); <u>Charles</u>

---

[7] This figure does not include block billing for trial or deposition dates, which, although problematic for other reasons, do not prevent the Court from conducting a meaningful review of the hours requested. It also does not include any block-billing for hours less than 11.25, of which there was plenty.

v. City of New York, No. 13-CV-3547 (PAE), 2014 WL 4384155, at *6 (S.D.N.Y. Sept. 4, 2014) (reducing fee award based on block billed entries spanning more than six hours each).

Moreover, in all but one of the 19 instances identified above, H&H included multiple attorneys in its billing entry, half of whom have different hourly rates. On January 28, 2015, for example, four H&H attorneys collectively billed 34.5 hours for the following tasks: "Pre-Trial Conference, [r]eview endorsed letter from court, review draft correspondence to court re letter, prepare Ryan Slack, update exhibit binders." Id., at 11. The time records do not identify how many hours each task required, or which attorney worked on which task. Id. As a result, the Court cannot determine (1) if the entries are duplicative, unnecessary, or excessive; and (2) whether they were performed by a partner when they more reasonably should have been performed by an associate or paralegal. Block-billing activities that are compensable at different rates further supports a reduction in fees.

### D.     Implausible Billing Entries

Finally, several of H&H's billing entries are not credible. On September 2, 2015, three lawyers collectively billed 22 hours for a "Court Conference." See Corrected Exhibit C, at 17. But there is no minute entry for that date, and the Court was unable to locate an order from Judge Caproni scheduling a conference. Similarly, on January 4, 2016, Scott Richman billed ten hours for "Serv[ing] [a] Motion to Enlarge Appeal." Id. This is problematic — not only because of the hours expended — but because the parties agreed to withdraw GreenPearl's appeal in *October 2015*, nearly three months before the alleged appellate work. Held Decl., Exhibit F, at 134. These are more than just "excessive or unnecessary" hours. See Gonzalez, 112 F. Supp. 3d at 29. Rather, they appear to lack any basis in fact, and as a result, should not be included in H&H's recovery.

Other aspects of H&H's billing records raise additional concerns. On December 29, 2014, two attorneys spent 12.25 hours drafting a letter to the court regarding discovery and a potential preliminary injunction. <u>See</u> Corrected Exhibit C, at 7. But that letter is only two pages long, and it contains barely any factual or legal argument. Held Decl., Exhibit F, at ECF No. 23. No reasonable attorney would spend over 12 hours producing such a routine letter motion. To the extent the attorneys performed work in addition to the discovery letter, their billing entry is too vague for the Court to determine what tasks were performed and whether those hours were reasonably expended.

Similarly, on June 5, 2015, three attorneys spent nine hours reading and discussing a "Decision." <u>See</u> Corrected Exhibit C, at 12. The only decision issued on June 5 was a two-page "Judgment" based on the court's May 29 Opinion & Order. Held Decl., Exhibit F, ECF No. 75. Again, no reasonable attorney would spend nine hours reviewing such a brief decision. Although the billing entry is vague, it is possible that the attorneys were reviewing the Opinion & Order itself, rather than the corresponding judgment. But even in that case, H&H had already billed 6 hours reviewing the May 29 decision, meaning that its attorneys collectively spent 15 hours reading a single opinion. <u>See</u> Corrected Exhibit C, at 12. Even in a vague and block-billed format, it is clear that these hours were redundant, excessive, and unnecessary.

### E.     The Appropriate Percentage Reduction

Courts may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." <u>Kirsch v. Fleet St., Ltd.</u>, 148 F.3d 149, 173 (S.D.N.Y. 1998) (quoting <u>New York Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983)). Such reductions may reflect the reviewing court's decision that "billing records were not sufficiently detailed, contain inappropriate block billing, and/or that matters were overstaffed." <u>Centro de la</u>

Comunidad, 2019 WL 2870721, at *7.  Depending on the facts of a case, an across-the-board reduction can range from 15% to 50%. See Simmonds, 2008 WL 4303474, at *7–9 (reducing a fee request by 55% to account for duplicative work and ambiguities in the billing records); Matusick v. Erie County Water Auth., 757 F.3d 31, 64 (2d Cir. 2014) (upholding 50% reduction in light of concerns regarding "unspecified conferences, telephone calls, email correspondence, and reviews"); Francois v. Mazer, 523 F. App'x 28, 29 (2d Cir. June 25, 2013) (affirming a 40% reduction in hours); Vista Outdoor Inc. v. Reeves Family Tr., No. 16-CV-5766 (JSR), 2018 WL 3104631, at *7–9 (S.D.N.Y. May 24, 2018) (excluding fees associated with the time entries of four attorneys and applying a 35% reduction for all remaining attorney hours); Beastie Boys, 112 F. Supp. 3d at 57 ("Fee reductions around 30% are . . . common in this District to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed.").

Based on the deficiencies identified above, the Court estimates that H&H's time records contain approximately 269.75 hours for vague billing entries; 142 hours for overstaffed or duplicative work; 410 hours for improper block-billing; and 19 hours for implausible or unreasonably expended hours. The Court's estimation does not count any improper entries twice, and more importantly, includes only the most obvious problem areas. In other words, there are *further* examples of vague billing entries, overstaffing, block-billing, and incredible billing entries that the Court *did not* consider.

Even taking these steps in H&H's favor, the Court has identified nearly 841 hours that were improperly billed. Because this amounts to just under half of H&H's total billing entries, the Court recommends reducing H&H's proposed attorney hours by 50%. Similarly, given the systemic errors identified above, the Court is not confident that H&H's paralegals received training on proper billing techniques. Accordingly, to "trim the fat" from H&H's fee application,

the Court further recommends reducing H&H's proposed paralegal hours by 20%. H&H should

therefore receive the following attorney's fees:

| Name | Experience | Proposed Billing Rate | Reduced Billing Rate | Proposed Hours Expended | Reduced Hours Expended | Fees Awarded |
|---|---|---|---|---|---|---|
| Marc Held | Partner | $450 per hour | $400 per hour | 575.03 | 287.515 | $115,006 |
| Philip Hines | Partner | $450 per hour | $400 per hour | 167.20 | 83.6 | $33,440 |
| Scott Richman | Associate | $300 per hour | $250 per hour | 751.53 | 375.765 | $93,941.25 |
| Fred Seth Rosenberg | Associate | $300 per hour | $250 per hour | 194.75 | 97.375 | $24,343.75 |
| Eric Rodriguez | Legal Assistant | $100 per hour | $100 per hour | 63.00 | 50.4 | $5,040 |
| Jesmine DeJesus | Legal Assistant | $100 per hour | $100 per hour | 13.00 | 10.4 | $1,040 |
| | | | | | | Total: $272,811 |

## IV.    Expenses

H&H claims that it is entitled to $36,602.01 in expenses. Pl's Br., ¶ 6. As part this figure,

H&H includes $22,757 that it paid to an attorney named Jonathan Borg. Id., ¶ 85. In a related

grievance proceeding, Borg explained that he agreed to assist H&H while it litigated the State

and Federal Actions. Def's Br., ECF No. 125, at 39. Borg stated that he did not execute an

engagement letter with either H&H or Hussain; rather, his services were "in the nature of a third-

party vendor to H&H." Id. The Court agrees with Hussain that any expense related to Borg (the

"Borg Expense") should be excluded from H&H's recovery.

Under its retainer agreement with Hussain, H&H must obtain Hussain's approval before

incurring any expense over $1,000. Held Decl., Exhibit B, at 2. H&H argues that Hussain was

"well-aware of the presence of Borg" and that Hussain "knew and approved of the expense

ahead of time." Pl's Br., ¶¶ 87, 88. The evidence does not support this position. On November

23, 2014, Scott Richman told Hussain to "please include jborg@bedell-forman.com on all

subsequent . . . ." Def's Br., ECF No. 125-1, at 59 (ellipsis in original). Although Hussain

followed these instructions and included Borg on future emails, see Held Decl., Exhibit G, that

does not show that Hussain agreed to pay Borg's hourly rate as an expense.

"The law is clear that the party seeking fees bears the burden of proof." Crout v.

Haverfield Int'l, Inc., 348 F. Supp. 3d 219, 233 (W.D.N.Y. 2018) (quoting OneWest Bank, N.A.

v. Hawkins, No. 14-CV-4656 (NGG), 2015 WL 5706945, at *9 (E.D.N.Y. Sept. 2, 2015)).

Because H&H cannot show that Hussain approved of the Borg Expense, it should be excluded

from H&H's recovery.

In the alternative, H&H argues that it can recover the money paid to Borg under a theory

of *quantim meruit*. See Pl's Br., ¶ 89. But H&H makes no attempt to explain its position, let

alone establish that (1) it "performed services;" (2) "in good faith"; and (3) that those services

were "accepted" by Hussain. See Hampshire, 2015 WL 5306232, at *15 (identifying the

elements of *quantum meruit* under New York law) (citations omitted). Accordingly, this

argument should be rejected.

## CONCLUSION

For the foregoing reasons, the Court recommends GRANTING in part and DENYING in

part H&H's request for a *quantum meruit* recovery. H&H should be awarded $272,811 in

attorney's fees, and $13,845.01 in expenses, for a total recovery of $286,656.01.

DATED:     August 7, 2019
           New York, New York

                                              SARAH NETBURN
CC:         Sandy Hussain (*By Chambers*)        United States Magistrate Judge
         613 E. Santa Ana Blvd.
         Sana Ana, CA 92701

\*                  \*                  \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rakoff. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).